OPINION
{¶ 1} Defendant-appellant, John E. Neely, appeals his convictions in the Madison County Court of Common Pleas for one count of rape and two counts of gross sexual imposition ("GSI"). We affirm the decision of the trial court.
 {¶ 2} Appellant and Mrs. Neely were married on July 30, 2000. Shortly after moving in with appellant, Mrs. Neely noticed that her three-year-old daughter began inserting toys into her vaginal cavity. Mrs. Neely also observed her daughter humping the arm of the couch in a sexual fashion. Furthermore, a Sunday School teacher gave Mrs. Neely a drawing that her daughter drew. The drawing was a depiction of a penis.
 {¶ 3} Appellant and Mrs. Neely began attending marriage counseling with their minister, Dr. Stephen Richardson. Appellant revealed to Dr. Richardson that he had engaged in sexual activity with his stepdaughter. Approximately one week later, Dr. Richardson came to the Neelys' house. While appellant was in the room, Dr. Richardson asked Mrs. Neely if appellant had revealed to her "what he was doing." Mrs. Neely stated that appellant told her he was "having an adulterous relationship." Dr. Richardson turned to appellant and asked if he was going to tell Mrs. Neely "the rest." Appellant then admitted to Mrs. Neely, in front of Dr. Richardson, that he had engaged in sexual activity with his stepdaughter. Mrs. Neely had her daughter removed from the house. Mrs. Neely did not immediately contact the police because appellant indicated that he would turn himself in. However, when appellant failed to turn himself in after a week, Mrs. Neely contacted the London Police Department to inform them of what appellant told her.
 {¶ 4} Sergeant Steve Pickett of the London Police Department interviewed Mrs. Neely. Subsequently, Sgt. Pickett contacted appellant. Appellant came to the police station and gave a voluntary written statement. In the written statement, appellant indicated that on one occasion, while he was showering, "unexpectantly [his three-year-old stepdaughter] came to him and grabbed his penis and placed it in her mouth." Appellant indicated that on another occasion, while he was sleeping on the couch, he woke up to find "his pants and belt loose" and his stepdaughter climbing off the couch. On yet another occasion, appellant indicated that while he was lying on a mattress, his stepdaughter climbed up beside him, and "rubbed and grinded her vagina and anus on my private area."
 {¶ 5} Charges were filed against appellant and he was subsequently arrested. After appellant was arrested, he was interviewed again. In a taped statement, appellant again acknowledged the three episodes of sexual contact and conduct with his stepdaughter.
 {¶ 6} On July 20, 2001, appellant appeared for arraignment at which time he attempted to enter a guilty plea. However, since appellant was without his counsel, the court requested appellant to have his counsel with him before allowing him to waive his rights and enter a guilty plea. With counsel present, appellant entered a not guilty plea. Prior to trial, appellant changed his plea to not guilty by reason of insanity, ("NGRI") and he made a suggestion of incompetency. The court ordered an evaluation of appellant to determine his sanity as well as his competency to stand trial.
 {¶ 7} On September 7, 2001, a suppression hearing was held regarding appellant's statements. The trial court ruled that the statements were admissible. On December 20, 2001, the court conducted hearings to determine appellant's competency as well as his sanity. The trial court concluded that appellant was competent to stand trial.
 {¶ 8} Following a trial on January 10, 2002, a jury found appellant guilty of one count of rape and two counts of gross sexual imposition. On January 11, 2002, appellant was sentenced to ten years of incarceration for the rape count and five years for each of the two counts of GSI. The court ordered the sentences to be served consecutively for a total of a 20-year sentence. Appellant appeals his convictions, raising two assignments of error.
Assignment of Error No. 1
"The trial court erred and thereby violated appellant's due process right to a fair trial, when it failed to find appellant incompetent to stand trial."
 {¶ 9} Appellant argues that the trial court should have found him incompetent to stand trial. In support of his contention, appellant argues that the opinions of the experts who examined him were conflicting.
 {¶ 10} An appellate court will not disturb a competency determination if there was "some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him." State v. Williams (1986),23 Ohio St.3d 16, 19. The adequacy of the "data relied upon by the expert who examined the [defendant] is a question for the trier of fact." Id. Moreover, a trial court's decision on competency will not be disturbed absent an abuse of discretion. State v. Clark, 71 Ohio St.3d 466, 469,1994-Ohio-43. An "abuse of discretion" requires more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Id. at 470.
 {¶ 11} The trial court ordered an evaluation of appellant by Dr. Robin Gofberg for competency and insanity. Appellant filed a motion for an independent evaluation pursuant to R.C. 2945.371. The court appointed Dr. Jeffrey Smalldon to independently evaluate appellant for competency and insanity. At appellant's pretrial competency hearing, Dr. Gofberg opined that, within a reasonable degree of psychological certainty, appellant was sane and competent to stand for trial with respect to the standards set forth in R.C. 2945.37.
 {¶ 12} In contrast, Dr. Smalldon determined that while he could conclude that appellant was sane, he could not provide an opinion within a reasonable degree of psychological certainty as to whether appellant was or was not competent to stand trial. However, Dr. Smalldon testified that interviewing appellant was "a most challenging process" because appellant refused to complete any of the tests he administered. Furthermore, Dr. Smalldon stated that he could not rule out the possibility that appellant was malingering. Dr. Smalldon defined malingering as "the deliberate exaggeration of symptoms that are suggestive of mental illness or deliberate production * * * of symptoms suggestive of mental illness when in fact no mental illness exists." Dr. Smalldon also noted in his report that after appellant entered his NGRI plea, "[w]ith increased frequency, he began asking odd, seemingly off-the-wall questions that at least caused [the jail nurse, Traci Coffey] to wonder whether he was perhaps attempting to appear even more disturbed than he really was." Based upon these evaluations, the trial court found that appellant competent to stand trial.
 {¶ 13} It has been held that a psychiatrist's written report and corroborative testimony that the defendant was competent to stand trial is sufficient evidence to support the trial court's finding of competency. See State v. Marshall (1984), 15 Ohio App.3d 105, 106-107. Dr. Gofberg's written report provided the trial court with reliable, credible evidence that appellant could understand the nature and objective of the proceedings against him and assist in his defense. Dr. Gofberg indicated that appellant was interviewed at the Tri-County Jail on November 29, 2001. Dr. Gofberg's opinion states that appellant "does not have significant cognitive deficits that would seriously compromise his ability to assume the role of a defendant in court. It is further my opinion that he is capable of understanding the nature and purpose of the proceedings against him and of assisting in his own defense." In light of all the evidence presented on appellant's mental capacities, the trial court acted reasonably in finding appellant competent to stand trial. Cf. State v. Stauter (July 17, 1998), Greene App. No. 97 CA 72.
 {¶ 14} Appellant also argues that he demonstrated behavior during the trial that "warranted the trial court to suspend the trial proceedings and sua sponte conduct an inquiry relating to appellant's competence to stand trial." In support of his contention, appellant notes a number of instances where he argues the trial court should have questioned his behavior.
 {¶ 15} Once a trial has commenced, it is within the trial court's discretion to determine whether a competency hearing should be held.State v. Rahman (1986), 23 Ohio St.3d 146, 156. An abuse of discretion is more than an error of judgment, instead it indicates that "the court's attitude is unreasonable, arbitrary or unconscionable." Clark,71 Ohio St.3d at 470, 1994-Ohio-43. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. at 469.
 {¶ 16} Appellant indicates that the first questionable behavior he exhibited was appearing before the jury in his jail clothing. However, the court addressed appellant on this matter. The court stated, "you have a right to appear here in civilian clothes. You have chosen apparently at this time to appear in jail grab, is that your choice at this time?" Appellant nodded his head affirmatively. Though a defendant cannot be compelled to appear at trial in identifiable jail clothes, he may choose to do so. See State v. Wigley, (Feb. 6, 1997), Cuyahoga App. No. 69920. Allowing appellant to wear his jail clothing, if he chooses to do so after being informed of his rights, is not an abuse of discretion. See id.
 {¶ 17} Appellant next notes that his competency should have been questioned when he made obscene hand gestures during trial. When Mrs. Neely testified on the stand, appellant pointed his middle finger upward on two separate occasions. Although this action does indeed constitute outlandish behavior, it illustrates appellant's rudeness rather than his incompetency to stand trial. See State v. Franklin, 97 Ohio St.3d 1, 5,2002-Ohio-5304 at ¶ 16.
 {¶ 18} Appellant next notes that the trial court should have questioned his competency when he revealed that he had witnesses he wanted to call after the trial started, thus preventing his counsel from issuing subpoenas for the witnesses. Appellant maintains this demonstrates his inability to assist his attorney.
 {¶ 19} However, the record fails to indicate that appellant was incapable of assisting his counsel in his defense or that he had an impediment to understanding the proceedings. Dr. Smalldon noted in his report that appellant "expressed global cynicism about the legal process and indicated his uncertainty about whether he could/should trust * * * his legal representative." Appellant showed that he understood the proceedings by responding to each of the questions asked by his attorney and the trial court while he was on the stand. Appellant was able to assist his attorney with his defense, if he so desired. Cf. State v.Vrabel (Mar. 2, 2000), Mahoning App. No. 95 CA 221. However, willingness to assist one's own attorney in one's defense is not the test for competency. State v. Berry, 72 Ohio St.3d 354, 362, 1995-Ohio-310. The proper inquiry looks at the defendant's present ability to so assist. Id. Appellant had the ability to assist his attorney, yet chose not to, which does not indicate he was incompetent. Thus, the trial court did not abuse its discretion by refusing to conduct another competency hearing once the trial commenced because appellant had the present ability to assist his counsel.
 {¶ 20} Lastly, appellant notes that choosing to take the stand against his counsel's advice was questionable behavior. Furthermore, appellant notes that admitting to "various instances of indecent sexual conduct he had encountered throughout his life" was questionable behavior that warranted the trial court to conduct another inquiry into appellant's competence to stand trial.
 {¶ 21} Appellant was informed by his counsel of his Fifth Amendment rights and counsel recommend that he should not take the stand. Nevertheless, appellant chose to take the stand. No matter how strange appellant's admissions to "various instances of indecent sexual conduct" were, he made a knowing and intentional decision. Appellant's knowledge and intentions are apparent in his statements on the stand. Appellant stated, "I feel that it's everyone's right to go ahead and have all the information that has been provided to the lawyers and everything that came about in this case. That's what I feel."
 {¶ 22} Appellant made his own knowing and intentional choice and gave a reason for that choice. Ultimately, it is for the defendant to decide whether or not the he should take the stand, defense counsel's role is only to advise the defendant. See United States v. Teague
(C.A.11, 1992), 953 F.2d 1525, 1532-33, certiorari denied, 506 U.S. 842,113 U.S. 127. Since the right to testify is personal to the defendant, it may be relinquished only by the defendant, yet, the defendant's relinquishment of the right must be knowing and intentional. See UnitedStates v. Joelson (C.A.9, 1993), 7 F.3d 174, 177. The trial court did not abuse its discretion by not holding a competency hearing when appellant knowingly and intentionally relinquished his right to remain silent.
 {¶ 23} On the basis of these facts and circumstances, the trial court could reasonably conclude that appellant's courtroom actions were further efforts to feign mental illness in order to disrupt the trial proceedings and/or avoid conviction. These actions did not signal a change in his mental state that would reasonably portray a genuine need to conduct yet another competency hearing. Therefore, we hold that the trial court did not abuse its discretion by declining to conduct another competency hearing during the trial. See State v. Caes (Mar. 9, 2001), Montgomery App. No. 17917. Consequently, the first assignment of error is overruled.
Assignment of Error No. 2
"The trial court erred to the prejudice of appellant by overruling hisCrim.R 29. [sic] motion for acquittal when the record is devoid of evidence to establish the Corpus Delicti of rape and gross sexual imposition."
 {¶ 24} Appellant argues that, "the evidence, without taking into account [his] confession, is deficient to show that it is probative of some material element of the crime of rape and/or GSI." Appellant argues, therefore, his confession should not have been introduced at trial.
 {¶ 25} In support, appellant cites the leading case of State v.Maranda (1916), 94 Ohio St. 364, wherein the Supreme Court of Ohio at the syllabus stated as follows:
 {¶ 26} "By the corpus delicti of a crime is meant the body or substance of the crime, included in which are usually two elements: (1) the act. (2) The criminal agency of the act.
 {¶ 27} "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible * * *."
 {¶ 28} In order for a defendant's confession to be admissible, the state need only produce some evidence of the material elements of the crime in question. State v. Edwards (1976), 49 Ohio St.2d 31, 35, overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147. It has been held that "the quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Maranda at paragraph two of the syllabus. (Emphasis sic.) Furthermore, that evidence may be direct or circumstantial.Maranda at 371; State v. Nicely (1988), 39 Ohio St.3d 147, 154-155; Statev. Clark (1995), 106 Ohio App.3d 426, 431.
 {¶ 29} Count I of the indictment charged appellant with rape as the result of engaging in sexual conduct between June of 1999 and June 6, 2001, with another who was not his spouse and who was less than 13 years old. R.C. 2907.02(A)(1)(b). Counts II and III charged appellant with GSI as the result of engaging in sexual contact between June of 1999 and June 6, 2001, with another who was not his spouse and who was less than thirteen years old. R.C. 2907.05(A)(4).
 {¶ 30} The evidence at trial established that appellant's stepdaughter was three years old on June 6, 2001, at the time of the alleged offense. Therefore, she was under 13 years old at the time. Furthermore, the evidence established and that his stepdaughter was not his spouse. Mrs. Neely also testified that her daughter didn't start inserting toys into her vagina until they "moved in with [appellant]."
 {¶ 31} The trial court properly determined that there was some evidence outside of appellant's confession to prove the material elements of rape and GSI. We find that the foregoing constitutes some evidence of the corpus delicti of rape and GSI. Accordingly, we overrule appellant's second assignment of error.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.